**David L. COX and Sandra S. Cox, Appellants-Plaintiffs,**

v.

**DEPARTMENT OF NATURAL RE-SOURCES of the State of Missouri, et al., Respondents-Defendants.**

**No. WD 36065.**

Missouri Court of Appeals, Western District.

July 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 1, 1985.

Application to Transfer Denied Nov. 21, 1985.

Gary W. Collins, Kansas City, for appellants-plaintiffs.

William L. Webster, Atty. Gen., and Louren R. Wood, Asst. Atty. Gen., Jefferson City, for respondents-defendants.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Plaintiffs David L. Cox and Sandra S. Cox filed suit in Clay County for personal injuries sustained by David in a swimming accident at Watkins Mill State Park. Plaintiffs named the Department of Natural Resources and eleven individuals as defendants. The trial court sustained defendants' Motion for Judgment on the Pleadings, Or Alternatively, for Summary Judgment and dismissed the action. Plaintiffs appeal the dismissal.

The facts are as brief as they are tragic. On July 23, 1977, David was swimming at Watkins Mill State Park in an area designated for swimming. The area was clearly defined by a rope with bouys attached. The rope was stretched perpendicular to the shore for a distance, then ran horizontal with the shore to a point and then perpendicular back to the bank. It was in this roped off area that the plaintiff made a shallow surface dive, struck his head on a submerged, hidden, tree stump and became an instant quadripligic.

Plaintiffs commenced this litigation charging defendants, in their first amended petition, with negligence in the failure "to properly construct, supervise, inspect and maintain the described swimming area, and also in failing to warn David L. Cox of the dangerous and deadly condition of the area, specifically the hidden existence of a stump in the water." The parties stipulated that the motions to dismiss filed with respect to plaintiffs' original petition would remain in full force and effect and constitute responses to the amended petition. The motions to dismiss, along with defendants' motion for summary judgment, set forth the following contentions: 1) the Department of Natural Resources was immune from suit by virtue of the doctrine of sovereign immunity, 2) certain individual defendants were immune from suit by virtue of the doctrine of official immunity in that their duties and functions were discretionary, 3) the individual defendants cannot be held accountable for the negligent acts of their subordinates because the doctrine of respondeat superior is not applicable, and 4) other individual defendants owed no duty to plaintiffs under the public duty doctrine and therefore plaintiffs failed to state a cause of action against them. The trial court sustained defendants' motions, dismissed the cause, and rendered no findings of fact or conclusions of law, as none were requested by either party.

This appeal involves the issues of sovereign immunity, official immunity, and the public duty doctrine. Therefore, it is initially necessary to identify the defendants with particularity in order to properly determine which, if any, of the defenses would apply to them. The Department of Natural Resources, an agency of the State of Missouri, encompasses the Division of Parks and Historic Preservation.[1] Individual defendants Wilson, Ashford, Lafser, Wright, Epperson and Jaeger, were at various times either Director of the Division of Parks or the Director of the Department of Natural Resources.

1. This division was known earlier as the Division of Parks and Recreation and earlier still, as the Division of State Parks, For simplification, it will be referred to as the Division of Parks.

Defendant Otke was the associate director of the Division of Parks who was responsible for park development for the ten year period preceding plaintiff's accident. Defendant Repp was, for the four years prior to plaintiff's accident, the supervisor for Region I of the Division of Parks which included in 1977 approximately twenty state parks of which Watkins Mill was one.

Defendants Holcomb, Warning and Menke each served as superintendent of Watkins Mill State Park either prior to or at the time of plaintiffs' accident.

Plaintiffs' points on appeal are not addressed in the same numerical order as presented by plaintiffs.

*Sovereign Immunity.* Plaintiffs first argue the trial court erred in dismissing because the doctrine of sovereign immunity violates their right to equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. Under the doctrine of sovereign immunity, the State of Missouri and its political subdivisions were traditionally immune from suit for the tortious acts committed by their agents and employees and the liability arising therefrom. *O'Dell v. School District of Independence*, 521 S.W.2d 403 (Mo. banc 1975).

Plaintiffs are most concerned with the Missouri Supreme Court decision, *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo.1977), wherein the Court abrogated the doctrine of sovereign immunity as a defense against the plaintiff in three sister cases and ruled the effect of the opinion prospective as to all other plaintiffs, the effective date being August 13, 1978. The legislature responded quickly to the *Jones* decision by enacting § 537.600, RSMo 1978, which reinstated the doctrine with two limited exceptions.[2]

Plaintiffs argue that allowing the plaintiffs in *Jones* to recover results in an unreasonable selection of one person over another. Because the plaintiffs are not in a suspect class, there must be a rational basis behind the state's means of furthering a legitimate state interest before a classification of persons will be valid. *ABC League v. Missouri State High School Activities Association*, 530 F.Supp. 1033 (E.D.Mo. 1981), rev'd 682 F.2d 147 (8th Cir.1982); *Christophel v. Parkway School Dist.*, 600 S.W.2d 61, 62 (Mo.App.1980). The classification challenged by plaintiffs are those persons who were injured by the state's alleged breach of duty to provide a safe use of its areas and who had the misfortune of not being a plaintiff in the *Jones* decision. Plaintiffs claim that they are entitled to the same privileges as the *Jones'* plaintiffs under the law of equal protection.

We need not delve further into an analysis of this argument in light of *Spearman v. University City Public School Dist.*, 617 S.W.2d 68, 69 (Mo. banc 1981), wherein the Missouri Supreme Court unequivocally foreclosed the argument by noting:

"Nor do we agree with plaintiff's contention that *Jones'* prospective application violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. We agree

---

**2.** Section 537.600 reads:

Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

with the view expressed by the Supreme Court of Illinois [citation omitted] to-wit: 'It is within our inherent power as the highest court of this State to give a decision prospective or retrospective application without offending constitutional principles [citations omitted].' "

See also, *Christophel v. Parkway School Dist., supra.*

In both *Spearman* and the instant case, the plaintiffs suffered injuries prior to the *Jones'* decision. As the Supreme Court of Missouri has addressed the issue, its decision is binding on this court. *Smith v. St. Louis Public Service Co.*, 364 Mo. 104, 259 S.W.2d 692, 694 (1953); *Estate of Seabaugh*, 654 S.W.2d 948, 957 (Mo.App.1983).

■ Plaintiffs argue under Point V that § 537.600.2, *see* n. 1, *supra*, waived sovereign immunity where injuries are caused by the condition of public property and therefore the public entity is liable in tort. Plaintiffs are really arguing that § 537.-600.2 should be applied retrospectively to allow recovery in instances where the *Jones* decision does not apply. However, the Eastern District Court of Appeals has held otherwise in *Christophel v. Parkway School Dist., supra*, at 62, by stating that "under the statute, the state and its political subdivisions are not answerable in damages except for those claims arising after August 13, 1978." The reason behind the interpretation is that the legislature chose to waive immunity from "liability and suit" rather than from liability or suit," and made the waiver of both effective on August 13, 1978.

This court has previously recognized the *Christophel* opinion in *Fowler v. Board of Regents, Etc.*, 637 S.W.2d 352, 353 n. 1 (Mo.App.1982), and hereby adopts the opinion as our view of the situation. Therefore the trial court did not err in dismissing plaintiffs' action against the Department of Natural Resources, a political subdivision of the State of Missouri. Plaintiffs' Points I and V are denied.

*Official Immunity.* It is clear that the doctrine of official immunity remained intact throughout the period of instability experienced by the doctrine of sovereign immunity. *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979); *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 763 (Mo.App.1981). Essentially the doctrine provides that public officials are immune from liability arising from negligence in the performance of discretionary duties, but not in the performance of ministerial duties. *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985); *Jackson v. Wilson, supra*, at 42.

Under Point III, plaintiffs contend that even though certain individuals may have been public officials, they are not immune from liability because the duty to provide a safe swimming area is ministerial.

In *Jackson v. Wilson, supra*, the Director of the Division of Parks and Recreation, the same Wilson who is a defendant in the instant case, was subject to suit arising from circumstances similar to those herein. The plaintiff Jackson was seriously injured when he struck his head on a shallow river bottom after diving into the river from a boulder located near a state maintained swimming area and on state park property. Jackson alleged Wilson negligently exercised his discretion and judgment in formulating policies for supervision of the State Park, i.e., there were no warning signs or diving prohibitions. The court in *Jackson*, at 43, avered:

A ministerial function, as opposed to a discretionary function, has been defined as that "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Yelton v. Becker*, 248 S.W.2d 86, 89 (Mo.App.1952). On the other hand, a discretionary function may be fairly defined as one necessarily requiring the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.

The *Jackson* court concluded that Wilson's conduct was of a "discretionary character thereby entitling Wilson to claim immunity from liability...." *Id.*, at 44.

Plaintiffs herein claimed in their petition that it is the responsibility of the Parks Division "to acquire, protect, and develop a state park system." As noted, they claim in their briefs that the duty to develop a park necessarily implies the duty to keep the swimming area safe and that this duty was ministerial. The *Jackson* court, at 44 discussed *Meyer v. Carman*, 271 Wisc. 329, 73 N.W.2d 514 (1955), wherein the Wisconsin court pointed out that a duty to keep school grounds safe was discretionary in character by noting, "a great many circumstances may need to be considered in deciding what action is necessary to do so, [keep the area safe] and such decisions involve the exercise of judgment or discretion rather than the mere performance of a prescribed task." *Meyer*, 73 N.W.2d at 515. We note that the Missouri Supreme Court in *Sherrill v. Wilson*, 653 S.W.2d 661, 665 (Mo. banc 1983), cited *Jackson* in noting, "The opinion is well buttressed by citation of earlier Missouri cases and we believe it accurately expounds Missouri law."

■ Plaintiffs claim that there is a genuine issues of material fact: whether or not the particular duties are discretionary or ministerial. We find plaintiffs' attempt at distinguishing *Jackson* from the instant case to be unpersuasive. The facts are so similar that to deviate from the holding as it applies to the directors would be an abrogation of precedent. The individual defendants Wilson, Ashford, Lafser, Wight, Epperson and Jaeger, as either directors of the Department of Natural Resources or the Division of Parks or both, were clearly public officials protected by the doctrine of official immunity in that their duties were of discretionary character. This would be our conclusion if the duty was regarded as being general in nature, the duty to develop a state park system, or more specific, the duty to develop and maintain a safe swimming area at Watkins Mill State Park. Plaintiffs present no allegation that any of the aforementioned defendants participated personally in the actual planning, development, or maintenance of the swimming area, nor that those defendants had any knowledge of the hidden stumps. Therefore, we regard their argument to be that those particular defendants are vicariously liable under the doctrine of respondeat superior which is inapplicable. *State ex rel. State of Missouri, Missouri Department of Agriculture, v. McHenry*, 687 S.W.2d 178, 183 (Mo. banc 1985); *Kanagawa, supra*, at 836, *Jackson v. Wilson, supra*, at 46.

■ Plaintiffs do allege that defendant Jaeger was responsible for designating and inspecting the swimming area. However, as the highest ranking official of the Division of Parks at the time the swimming area was being developed, Jaeger would have been required to make many decisions necessary to carry out his duties. Those decisions would have involved "determining how or whether an act should be done," *Jackson, supra*, and would have been based on his "professional expertise and judgment." *Kanagawa, supra*, at 836.

■ Defendant Otke was the assistant or associate director for the development of state parks for the ten year period preceding plaintiff David's accident. As a member of the immediate staff of the director of state parks, based in Jefferson City, his duties would have been no more ministerial than those of his superior, the director of the division. Otke had under his employ more than 350 persons, some of which were engaged in facilities construction or reconstruction of parks throughout the state.

The trial court properly dismissed plaintiffs' action against the director and associate director Otke.

Plaintiffs' Point III is denied.

Plaintiffs argue under Point II that a number of the defendants were employees, not officials, and therefore not protected by the doctrine of official immunity. First we note that the black letter law, as set forth by plaintiffs, has turned a bit grey in light of recent Missouri decisions.

■ The court in *Jackson v. Wilson, supra,* at 43, discusses with approval the Wisconsin case of *Meyer v. Carmen, supra,* wherein the defendants enjoyed the immunity granted officials, though they were designated as employees. Due to a comment by the Missouri Supreme Court in *Sherrill v. Wilson, supra,* it cannot be said with certainty that the choice of words in *Jackson* should be regarded as unintended. The *Sherrill* court referred to "the rule of non-liability of public officials *and employees* for discretionary acts." *Sherrill v. Wilson,* at 667. (Emphasis added.) However, regardless of whether or not it is generally appropriate to analyze and distinguish between officials and employees, in certain cases where the application of the public duty doctrine has been ultimately dispositive, such as here, the distinction has not been addressed. *Sherrill v. Wilson, supra; Jamierson v. Dale,* 670 S.W.2d 195 (Mo.App.1984).

■ *Public Duty Doctrine.* "The public duty rule denies a civil action against public employees for damages for negligence arising out of duties owed to the public at large." *Jamierson v. Dale, supra,* at 196.

Plaintiffs contend that the defendant's duty to provide a physically safe swimming area was a duty to David Cox, as an individual. They argue that David was swimming in an area provided for the benefit of a certain class of persons who chose to avoid the inherent dangers of swimming in a non-designated area of the lake.

There is a clear distinction between those cases wherein the appellate court ordered remand to allow a plaintiff to further plead a personal duty owed particularly to him, *Berger v. City of University City,* 676 S.W.2d 39 (Mo.App.1984); *State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761 (Mo.App.1981), and those cases wherein the decision of the lower court was affirmed on the basis that the defendant owed a duty to the general public and was therefore protected from private civil liability. *Sherrill v. Wilson, supra; Jamierson v. Dale, supra; Berger v. City of University City, supra.* In the former cases, the plaintiffs suffered injuries arising from circumstances peculiar to them, as individuals. In *Berger,* a picketing fire chief actively interfered with efforts of neighborhood fireman to extinguish the flames which ultimately destroyed the plaintiff's building. In *Eli Lilly,* plaintiffs brought suit against defendant doctors for the allegedly erroneous administration of a drug to one particular patient, to wit: plaintiffs' deceased mother. Thus the public duty doctrine did not shield the individual defendants.

■ In the latter cases the action or inaction complained of was one arising from a general duty to the public. The duty of the defendants herein cannot be said to have at any time extended to one particular plaintiff, but the duty was one imposed by the state for the public benefit. Plaintiffs' attempt to label David as an individual to which a duty was owed because he is a member of a particular "class," fails in light of *Jamierson v. Dale, supra.* In *Jamierson,* the defendant was reposed with the duty to inspect licensed day care centers to determine their compliance with licensing regulations. A child was injured after falling onto a hard non-resilient surface, the presence of which was a regulatory violation. The court found the inspectors duty to be to the State of Missouri and not to the limited class of children using the day care center. The same is true as to the park superintendents and Regional Director Repp; their duty to maintain a safe swimming area was one owed to the public.

We have fully considered plaintiffs' policy arguments and determine them to be, although morally compelling, legally without basis.

Plaintiffs' Points II and III are denied.

Judgment affirmed as to all defendants.

All concur.